The Illinois Appellate Court Ergovision is now in session. The Honorable Justice Jesse G. Reynolds presiding. Good morning, everyone. Please have a seat. Good morning. Good morning. It's still morning, so... All right. And would counselors who are going to argue this matter please approach the podium. Just remember that the microphone doesn't amplify, it only records, so keep your voices up. So everybody can hear you. Appellant Steward. And then also indicate what party you are representing. Good morning. John Kober here for Appellant Steward. Okay. Steven Garstke, and I'll spell that G-A-R-S-T-K-I, for the plaintiff. Okay. So 15 minutes apiece. Appellant, you want some time for rebuttal? Sure. How much time? Five. Five minutes? All right. Okay. All right. You may proceed any time. Okay. Good morning. As you said, John Kober here for the appellant. So this is a motorcycle versus car accident. My client's in the car making a U-turn outside of a busy pizza place. The main issue in this case, I mean, we want you to revisit Petroski, or at least I do. Which one, the first one or the second one? Well, I like the first one. The first one said that the court abuses their discretion by not allowing evidence that a blood alcohol content is over the legal limit. Do you think Petroski, too, overturned number one? Not at all, because there was an important point that I noticed in that case where the court didn't rule that it abused its discretion by allowing all of Dr. Lankin's testimony, just the part about intoxicated and impaired. However, I do think that Petroski was wrong and should be overruled in that. Two or one? Two. Okay. There's a part in that that mentions just because you're under the influence, that doesn't mean you're intoxicated. And so I started kind of just, my head was spinning as to what's under the influence mean, actually? I mean, it could mean that you've had a beer. It could mean that you've had a lot of beer. It could mean that you're unable to act and drive with ordinary care. So I had to actually look to the criminal IPI here to find a definition, because I couldn't find one in the statutes. I couldn't find one in really case laws. So new to me, the criminal Illinois pattern jury instructions, IPI 23.29, something new that I found since my brief or else it would have been included, that actually defines under the influence. And so the definition from that IPI is, a person is under the influence of alcohol when as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care. So that's what under the influence means. When you're presumed, when you're above .8, you're presumed under the influence. But don't we have to look at other factors to determine whether or not that definition, if it applies to an individual, also impaired their ability to drive? I think you can presume that it did, because that's what the legislature did when they selected .08 BAC as being the level, where you can be presumed under the influence and meet that definition if you're above .08. Okay. So you think just based on blood alcohol content, an expert like Dr. Leder, is that how you're? Liken. Liken, thank you. That just based on blood alcohol content alone, he could say that an individual was unable to care for their, exercise reasonable care for their safety at the time of the accident. I do think an expert like him could give that opinion, because he knows the science that went behind determining that alcohol level of .08. And I also went and looked and found a definition of intoxicated, to see how is that different from under the influence. And then this comes from the Illinois Pattern of Jury Instruction from Civil, 150.15. It's usually used in dram shop cases, but can be used in civil cases too. And so the definition of intoxicated from that is, when as a result of drinking alcohol or liquor, there is an impairment of his mental or physical faculties, so as to diminish his ability to think and act with ordinary care. It's essentially identical to the definition of under the influence of alcohol. So I think in Petroski, there is a part where it says, just because you're under the influence, it doesn't mean you're intoxicated. When you look at the definitions, it does. I mean, just because you've been drinking doesn't mean you're under the influence. But I think when you look at the definitions there, since they're identical, I think you can presume that someone is intoxicated if they meet the legal definition of under the influence, which is above .08. Officer Powers in the bystander report is saying that there was no indication that the motorcycle driver acted improperly. I think in his deposition he said the same thing, right? Right. She heard from two witnesses that said this person got hit by a car when he was making a U-turn. There is nothing in the evidence that shows this plaintiff was keeping a proper lookout, saw the car. I mean, his intoxication, his being under the influence reduced his reaction time clearly, and that could be considered by a jury in determining whether or not he was partially at fault for this. Despite what the witnesses said, they could choose to believe that. They could choose to believe that this would have happened regardless of him being under the influence, above the legal limit, but it is a statutory violation that the jury needed to consider to give the defense a fair defense in this case. The judge essentially cut off any chance of receiving a fair defense before the trial even began. Okay, but if you look at the Pekarsky cases, they both have factors and facts which led the court to determine whether or not the evidence should come in about intoxication. You had physical evidence that were available in both cases in terms of perceptions and so on and so forth, and here we really don't have anything along those lines. All we have is that she made a U-turn, and next thing she knows, she struck something, and then found the plaintiff next to her vehicle. Right, next thing she knows, she got hit in her driver's door, so it's not like it's the front of her car as soon as she pulls out. She's all the way perpendicular to it. Right, and so we don't have any evidence about speed, the lighting in the area, whether there was any waving or attempt to stop by either vehicle. We don't have any of those factors, so all we have is the fact that someone tested positive for alcohol, right, and so if you bring that out to a jury or bench trial, what's the point? If we have no evidence to indicate what happened in terms of actually according to this accident, what's the point of bringing out the fact that there was intoxication? Because he's violated a statute that's meant to – Was he charged? He wasn't charged, but there was evidence based on the known physical fact of his blood alcohol results, so it's not like he was just drinking. He was drinking enough to put his blood alcohol above the legal limit, which is the statutory violation that we need to get into evidence, that we should be able to get into evidence. How is that going to relate to whether or not this person could have prevented the accident or didn't prevent the accident because of the intoxication? How is that relevant? Well, a jury might find that it's not. They need to be able to consider it. I mean, his ability to perceive a danger in front of him, his ability to react in time, I mean, that's all going to be diminished by his blood alcohol content being over the limit. Okay. And so it's something a jury needs to consider. Whether or not they accept it, I mean, they're free not to. Okay, and what's the standard here for us? What's our standard of review? The standard is abuse of discretion, and I think you have two cases in front of you. Well, tell me how the trial judge abused her discretion here. Well, Wade 2 and Petrowski 1 both say that it's an abuse of discretion to not allow evidence that a blood alcohol limit is over the legal limit, regardless of anything else. I mean, those are two cases that say she abused her discretion. So I think that is the clear abuse of discretion here in that she didn't allow evidence that the plaintiff is violating the DUI laws. All right, so we have a bystander's report here, which quite honestly is something I've rarely seen up here. Right. Two parties agreeing to the facts and the testimony during the trial. It's a total agreement. The judge helped settle that. All right. But the point is that what seems to be missing here is the court's thought process and analysis in ruling on the DUI. So we don't know what was the judge's thought process and analysis when she said, you know, Pekarski 2 is applicable. That's contained in the transcript from the hearing on the motion in limine. That's it? Yeah. All right, but then you had a motion to reconsider, didn't you? Not a motion to reconsider, just a motion for a new trial. Okay. And then that issue was argued again? Yeah, in the briefs the same arguments were presented, the same reasoning was accepted, and that's what the judge denied it. Okay. So the same reasoning that was presented in the motion in limine was also the same reasoning the judge had in the motion for a new trial. Right, and Pekarski 2 is what she's using to justify her ruling. Okay. Do we have a transcript of that argument on the motion for a new trial? There was no argument on the motion for a new trial. It was just up for a ruling. Okay, so she just issued a written order. Right. And she mentioned Pekarski 2? Yeah. Okay. Anything else, counsel? Nothing else at this time, Your Honor. Okay. Thanks for your time. We have time for rebuttal. Appreciate it. Counsel? Thank you, Your Honor. I would like to just add that when this trial concluded and it was going up on appeal, everyone had to look how to do a bystander's report. The judge had never done one. I had never done one. Closing counsel had never done one. So this was our attempt at it. My first one, too. And it's certified, so, you know, we can consider it. It's a model for the future. So I would like to begin talking about jury instructions as well. I think the critical jury instruction I would like to start with is the 6-0-1. Counsel brings up the idea that, well, there was a violation of a statute. The way it's presented to a civil jury is through 6-0-1. There was at this time a statute that said X, Y, and Z. Well, let's look at the comments in the statute. And so did the court. And you look at the very end of it. It says this instruction, the instructions concerning violation of a statute ordinance and so forth should not be given unless the evidence is adequate to support a finding of that the violation actually occurred and that the violation was a proximate cause of the injury. Counsel said, well, you know, the very fact that someone's drinking, that that's proximate cause. Well, that leads to speculation. You know, when he says he uses the words relevancy, that's a purview of the judge, what's relevant and what's not relevant. She was right in doing what she's doing. I need to step back a little further because she heard this twice during the course of the proceedings. And that is Dr. Leiker. And this becomes critically important in this case because we have a bystander's report. And what's absent in that? The thing that's absent in that is any evidence of when or if my client drank. Why is this important? Dr. Leiker opines that at the time of the collision, my client had a .12 approximately blood alcohol concentration. Curiously, he also stated that at the time the test, the test itself, which he never saw. So let's take a look at it. He saw a report of a test. He never saw the test itself. It read the same number. How could that possibly be? That goes to a flaw of his opinion, but it gets worse. It gets worse because the only way an individual can determine what the blood alcohol of an individual is at the time at one point or another is one factor, time. Throughout his deposition presented to the court, I asked depositions because it was a discovery and evidence deposition presented to the court. I asked Dr. Leiker, when did the client have his first drink? When did he have his last drink? The answer was, I don't know. I don't know at all. When did he drink? I don't know. You cannot do a retrograde extrapolation without time. Are you saying that you can't do a retrograde analysis without knowing when the first drink and the last drink was had by the individual? Here's the problem that you have with it is, you have a spectrum that starts somewhere. You have the absorption period, and then when did that start? As I asked him, what happens if five minutes before my client got on his motorcycle, he drank a fish and whiskey? What would his alcohol concentration be five minutes later? Well, it certainly wouldn't be above the limits at the time of the collision. And that's part of the problem. But the relevant question is, if we're talking about the BAC, the BAC at the time of the collision. That's the relevant question. If you extrapolate it from the collision to the test, now you can perform an analysis, right? That's what his analysis is based on. But he's got it backwards. But counsel, doesn't that just go to the weight of his testimony? Well, of course, and credibility. Okay, fine. Credibility. But that doesn't make it admissible. But there are two cases out there right on point where the court can actually take a look at them. In the case of Kane v. Motorola, the court barred the expert by saying that there was simply too great of an analytical gap between the data and the opinions per offer. In this instance, he never looked at the test. Excuse me. I'm sorry. But did the court rule that the – this is a reviewing court. Is this the Supreme Court appellate court? It's the appellate court. This is a – Okay. Did the court of review say that the trial court properly barred it? Yes. Okay. But that's different. That's an abuse of discretion standard. That's different than the appellate court doing it, overturning the trial court. Right? I mean, we do have a deferential standard of review here. So that case might say it's okay in that context to have made that conclusion. But that's different than them doing it themselves, right? Well, here, in that case, an expert had faulty reasoning. Okay. And was barred. And they said that was okay. Okay. But in this case, that's not what happened, right? The trial judge did not bar this witness because of the argument you're making right now. Conceivably, that could be part of it. It certainly was part of my argument. What was that? Conceivably, it could have been. That was part of my argument. Okay. So you made that argument to Judge McWilliams. Yes, I did. And because I was under the impression that the basis for the ruling was that case that I – Petrosky. Petrosky 2, I think. 2, yes. Was it more than that? More was presented to her. You know, she didn't give a written ruling. She gave an oral ruling as to what she did. It was an interesting case. The defense counsel was in his car, I presume, and so it was kind of a haphazard thing the way it occurred. Sure, sure. But the idea being in this case is what did the court look at in that instance, what was presented to her, and what was the ultimate conclusion of her case is this guy cannot testify. She looked at Petrosky, and as the court noted here, you always have to have something to correlate along with simply drinking. That's what Petrosky says. Petrosky 1, you may like Petrosky. I like Petrosky 1, too, because it says the same thing. In that instance, the lady pulled out when there were screaming police car rides coming along, and she may have left her. Can a jury look at that and say that's evidence of maybe she was intoxicated and she did something stupid? Petrosky 2 throws that all out. But in any event, you always have that. That's why we have jury instructions that say the violation was an approximate cause of the injury. What we don't have in this case is anything. At the end of the case in the jury instruction conference, Judge McWilliams looked at the defense counsel and said, Show me any signs of contrib. Nothing. Nothing at all. There is nothing in this case that shows contrib that can show this. I don't mean to interrupt you, but the other factor here is, okay, so you have Dr. Liken look at a report and say, Based on what I've seen here, the individual in question was intoxicated, right? But you also have in the evidence that indication that he was unable to establish that the blood alcohol was actually tested. He wasn't familiar with the hospital's procedures and method, the way they drew the blood. There was also a question about the calibration of the hospital's equipment, as well as the chain of custody, as well as the question about, you know, the pain of having been injected with drugs. So to me, it seems that there's a lot of factors here that even if the evidence was presented, his testimony presented, based solely upon looking at a Dr. Schuyler report, that this expert's opinion could have been, based on, you know, the factors that I just delineated, could have been gone into question. So why not allow him to testify? I think because we get back to the point of the 6-0-1 issue. Alcohol out there by itself, disconnected from anything, as it was stated, in a vacuum, how does that go to proximate cause? Because always, always we have to have proximate cause. And I think it's reasonable for the courts to impose upon anybody bringing alcohol into a case is to say, why? And that's the question I would have in this case. You know, I go afield, but I was thinking about this case, and I thought to myself, well, why not bring it in with a passenger? Because a passenger didn't do anything wrong. Why bring it in, in this case, when I asked Dr. Lakin, in this case, do you have any evidence that alcohol had anything to do with this case? And he said, no. He had no evidence that alcohol in any way caused this collision. But, counsel, why couldn't intoxication have some bearing on the question of proximate cause in a given case? I mean, if you we could invent any number of court cases, right? I could invent a scenario where someone's sitting on a park bench, right? They're not moving. And they're drunk as a skunk, and something falls off a building and lands on them and hits them. Well, the fact that they're twice the legal limit would have nothing to do with the facts of the case. It wouldn't speak to proximate cause. But we're talking here about vehicles traveling, right? We're talking about a car pulling out and a motorcycle coming. Not very much factual testimony about this stuff, I grant you. But if a jury heard that the motorcyclists were one-and-a-half times the legal limit at the time this accident happened, you don't think that would more likely than not give them at least some reason? I'm not saying it would be dispositive. Are you saying that would not speak to proximate cause at all? If it doesn't, then how does this ever get? Under your reasoning, how does evidence of intoxication ever come? The same way they did in Petrovsky 1. There has to be something corollary. That's why we have it back in the jury instructions. There has to be something. We do have something in the bystander's reports, although it may be more in my memory of the trial itself. The witness has said she whipped out and the collision occurred instantaneously. It's an unavoidable collision. So how is alcohol allowed in a case like that? And that's exactly what I asked. There was a word I used with Dr. Liken, unavoidable collision, because we did have depositions. He chose not to read them at all, which again gets back to my point, Your Honor, is that you can't do a retrograde extrapolation without having time. And he had no time. He just never gets there. I don't disagree with the court on these issues in a general sense. I just have to say that I look at this case and I have Dr. Liken. I have jury instructions that tell me something. I have Dr. Liken, who has all these problems, and I do think it's the right of the court to take a look at his figures throughout this, together with the Petrovsky case, look at the factors in this case. She already had the discovery depositions of the witnesses. At no point was there ever an offer of proof from the defense saying, hey, we've got this additional extra information that ties it together, that shows that this is approximate cause, because then it becomes speculation. In Petrovsky 1, did the expert know when the plaintiff had taken his first drink and his last drink? I looked at that because it was a different one than Dr. Liken. And I did see that he performed the retrograde test. The test itself, and of course this is an appellate court ruling, does not indicate the additional evidence that he relied on in doing this. But the very fact that he did it speaks volumes as to the nature of what the facts were in that particular case. The reason why it wasn't done in this case is because Dr. Liken couldn't do it. He never uses those words because he knows the traps laid. Doctor, one was his first drink and one was his last drink. You're saying that this is at the elimination stage. How do you know that? Because he said this is at the elimination stage. How do you know that without time? I don't mean to take you back to Petrovsky 1 or whatever the name of the case is. I keep mispronouncing it. But are you telling me it's unclear whether the expert in that case relied on that additional information, or are you saying he didn't or did? No, I'm saying he had to have had it. Why? Because Paul Solzetta tried the case.  But Paul Solzetta tried the case. And no one, no one would let that one go. The reason I ask is you're telling us that we should be adopting this premise of yours. We've got that first Petrovsky case that said it was an abuse of discretion to not allow evidence of intoxication, of being over the blood alcohol level. And you're telling me here our expert did not know this information. And so I'm logically asking, well, did he know it in that case? I think the answer is you don't know. At least the record tells one way or the other. There's two things. I'd like to address first the issue of Petrovsky. Petrovsky 1 stands for the proposition that blood alcohol plus. And that is in conformity with 6D01, plus. So that's an issue. And I lost my train of thought. That's okay. So. I'm trying to make a comparison between 1 and this case. 1 and this case. Again, we come back to the same issue. Thank you. We come back to the same issue is that in Petrovsky 1, we have evidence that supports the idea that something that the individual lady did could be perceived as being a result of her drinking alcohol. That's where the proximate cause comes in. And she pulls right in front of him. That's not the actions of a reasonable person. And in every one of these cases, you've got to take a look at it. There was something that could be construed as unreasonable that could be argued that it was unreasonable because they were drinking alcohol. In this case, we don't even get there because we don't know the facts of the case, except for to the extent that we know that there was a collision. We don't know what he did. It seems from the two witnesses that it was a bang, bang, sorry, type thing, and that it was unavoidable. That's the words I used with Dr. Liken. If this unavoidable collision occurred, how did alcohol factor in? His answer in the deposition was, I have no opinion. If he has no opinion to that, why is it relevant? Why should it come in? Why should you have alcohol come in if this lady, and this is the way it seems, this is the testimony given prior to and at trial, is this lady pulled right in front of a car, truck, motorcycle. It was instantaneous and unavoidable. It was unavoidable whether there was alcohol or not. It is not a far-fetched to say your analogy of sitting on something and something coming down on them and hurt them. If it's an unavoidable collision, and it seems that there's some evidence to support that, there's a lot of evidence that supports that, then why alcohol? And, again, I refer you back to not only 6001, 1201, curiously, its comment refers us to the Belaga case, which also indicates at the bottom of it. And I have it here somewhere. Oh, I'm looking for that. Let me see if I understand your argument is that alcohol consumption evidence is relevant so long as we know what happened prior to the occurrence itself. So, for example, in Prakowski, we knew that, you know, the lady was sitting at the light. The assumption is she was waiting for the arrow, and then that's why she turned. But she didn't see the other vehicle coming with the sirens and the strobing lights. Right, and there was evidence. The evidence in the case is that she was drunk. And the perception may have been almost skewed because of it. Right. And in Prakowski 2, we also had some evidence about intoxication, but then we also had some indication as to what led up to the incident. Yes, and therefore you have that ruling. Right, and then here, if I understand your argument, is that we have evidence of alcohol consumption, but we don't have anything indicating what led up to the occurrence other than the car turning and making the U-turn. I want to go further. Justice Herrick mentioned that the court was presented with medical evidence, so was the expert, and actually no one ever said he drank, and he was intubated immediately, and the drugs that were listed that the court was aware of actually can skew blood alcohol. I mean, she looked at that, and she had that in the arguments. I was there. It was argued. You know, these certain three drugs can skew a blood alcohol test. There's a lot of things in this case that are compelling to me as to why a court could find the way the court did. It wasn't just simply Petroski. Petroski and the jury instructions all state you have to have approximate cause between the violation, if there was one in this case, and we don't know. I think that his opinion was faulty. The doctor was never asked. Dr. Likin was never asked during his evidence deposition about any of those drugs that you're mentioning, right, the fentanyl or the, I can't, I don't remember. There were three drugs. I think it was the lactose, one of the, any of the three drugs. He was never asked in his evidentiary deposition about the fact of those drugs on his BAC. He reviewed those, and he knew that those things were part of it. Okay. But I'm just saying on cross-examination he wasn't asked about that. That's true. On cross-examination, and I cannot recall whether they came up in the discovery deposition. I really don't recall. It may have been. I'm not sure. Okay. If you could start to sum up. Thank you. I believe that 6001 is a powerful indication of where the law is and needs to be, that a simple violation of the statute is not enough to be presented, that as it says, that the violation was an approximate cause of the injury, requires what we find in Petrosky, and that is a connection between the violation and the injury in order to have that. We find the same indication in 1205 where they defined, or 1201 where they defined alcohol, and the individuals, in that case, they refer you to the Belay case, which again states there's got to be some sort of connection between the intoxication and the result. Petrosky 2 says that. Petrosky 1 supports basically 6001. It's a poster boy for 6001 because it finds the same thing as Your Honor states. You've got to have these things. And then finally, it does go back to when the court heard these things. She ruled it's an interlocutory ruling. It was never readdressed by the defense at all. They never presented any evidence to the contrary that there was some sort of causal connection. They just didn't do that. You know, the best you find is at the motion in limine, counsel said, well, I'm sorry if I'm running long. Just kind of sum up. Said that the defendant is going to say she smelled alcohol and she saw him and she did all these things. Essentially trying to conform his case with the necessity of the statutes and the case law. And, of course, she didn't, as the bystander report said. She never went near him, never did anything. He never, again, did an offer of proof, never readdressed this interlocutory issue at all during the course of the proceedings to show any way that her ruling was improper. And I believe her ruling was, in fact, proper in the circumstance. Thank you. Thank you. Any rebuttal? Well, the reason there's nothing in that evidence deposition of Dr. Leikin about the other drugs is because it was gone into in the discovery depth and he said it wouldn't affect his opinions. And I had to look for the discovery depth because I wasn't sure. I mean, I read their motion and it seemed like a good argument, but I'm no expert on this stuff. So I had to see what the doctor opined and that's why I didn't come up in the evidence step. Counsel, what evidence of proximate cause would you have? If you accept counsel's, your opposing counsel's argument about 60.01, that you can't bring in evidence of intoxication unless you can show some causal link. What is your causal link? That is a question for the jury. I don't believe just because someone's over the legal limit and there's an accident like this that's not necessarily 100%. I mean, that can always be considered by a jury to determine whether or not there's proximate cause. It's not like it's a stopped rear-ender. It's somebody that's driving along, fails to exercise ordinary care, his reaction time's slowed down, his visual perception's distorted, and the expert did say in his evidence step that his alcohol consumption that night and the impairment on his physical facilities was a contributing cause to the accident. Now, is that testimony allowed by Petrovsky, that last thing you said? The expert's opinion on how it would affect his... Yeah, when I look at one and two, tell me if I've got this wrong. It was an abuse of discretion in one to not allow testimony that, number one, you were over the limit, and number two, here are the general effects of what happens when you're over the limit. That's why I'm thinking you should... But I thought that two said, but you can't go further than that. You can't say, unless you know, unless you happen to also be a lay witness, which you wouldn't be if you're an expert, you can't say that's why this happened. This person was intoxicated and behaved in an intoxicated manner that night when the accident happened. Doesn't the case law say you can't make that connection as the expert? That's what I'm saying. I think the case law is wrong because the definitions of under the influence and intoxication are the same. Okay. And so that's why I'm thinking they missed that. They missed the definitions of the two and didn't compare them. So you're saying both of the cases are incorrect, one and two? And the fact that an expert shouldn't be allowed to testify to intoxication, an expert like Dr. Leiken with his qualifications based solely on the blood test results. I think he should. Right. Okay, so if you allow a doctor to testify to intoxication, then the next step has to be how did that impact the individuals involved in the incident. Right. And that's a matter of argument for the jury to accept their objection. Yeah, but where is that going to come from? It comes from Dr. Leiken's testimony of how that amount of alcohol in the system affects a person driving a motorcycle and renders them unable to do so safely. But he never testified to that. He did testify that this individual was unable to safely operate a motorcycle on that night because of the alcohol in his system. So that is his opinion that he rendered based on the known physical fact. Based on what? Based on the known physical fact of his BAC being above .08. This expert knows the effects. I don't necessarily, so we had to rely on him. Okay, but we don't know when this person drank, when was the last time they had something to drink. Right. We don't know how the perception was affected in any manner, shape, or form. So just the fact that you're bringing up that there's intoxication, I mean, and you leave it hanging there. If, you know, a jury may interpret that and prejudice the other side's case because they can just say, well, this person was just intoxicated and that's what caused the accident, without anything linking the intoxication to the circumstances of the accident. We've just got the expert's opinion of how that amount of alcohol in this plaintiff's system affected his ability to operate the motorcycle safely. And I did find in the evidence that on the page of the record, 351, Dr. Lykin did read in the records that the plaintiff drank the day of the accident. Whether that came from him or his wife is up for debate, but he did know that he drank the day of the accident. That was something considered in his opinion. Okay. And in Precarious, do we have other witnesses that were not involved in the accident? Right. That testified, and some of them were a little bit different, but most of them testified as to what happened prior to the incident, which kind of alluded to the fact that maybe the person who was alleged to have been intoxicated had some issues with perception or understanding of what was going on with the lights. And we don't have anything like that here. More of a circumstantial argument based on the defendant never heard him coming, never heard a horn, and there's no evidence that he slowed down, tried to avoid it, or did anything that a person using ordinary care would do when they see someone pull out in front of them. Outside of a crowded restaurant, where you should probably expect that somebody is going to be leaving the parking spaces there. Are you going to expect somebody making a U-turn in front of you? I'd expect someone to pull out, possibly a U-turn. And I'd be reducing speed as I approach this crowded restaurant with lots of cars parked outside, reverse lights on one car, as you should have seen if he was using ordinary care. Thanks. Counsel, I mentioned this to you before. So your opposing counsel talked about 60.1. There needs to be some evidence of proximate cause. Am I correct to understand your argument that you're saying the fact that he was intoxicated is evidence itself of proximate cause? The fact that he was driving a motorcycle with blood alcohol all over the place could be considered proximate cause by a jury in this type of crash. Right. In and of itself, because he was operating, not just because he was drunk. I gave an example of sitting on a park bench drunk, but that's not a crime, first of all. And second of all, it couldn't conceivably have anything to do with something crazy just dropping from a building. That's why they don't want you to drive, because you can't exercise safety. So that is your argument, that the mere fact of intoxication is itself under these circumstances evidence of really contributory negligence, but proximate cause. I feel it is, and I feel a jury could decide that. Other than that, is there any testimony in this record about how the motorcyclist was conducting himself that night? Just the bystander's report. Okay, we're talking about the appellate record, but you tell me at trial, did anybody testify about it was going too fast, it seemed like it should have slowed down, but didn't, anything of that nature? I don't believe so. Okay. If that's the case, then don't you have a little bit of difficulty showing prejudice here? I mean, if the only evidence you have is that this person is over the blood alcohol, but you have no testimony or evidence as to how that impacted his driving, because it could have been that the car pulled out and he had no chance to react. He could have been perfectly sober and still wouldn't have reacted. If you have no evidence as to how this could have played any role in this, then why would we consider this to be an error that would have made a difference in the outcome? Dr. Lykins said this contributed to the accident, his inability to perceive his surroundings and use ordinary care. Okay, but that doctor has no idea how close to the car the motorcycle was when the car pulled out. It's conceivable that it could have pulled out so fast that a sober person of a young age and all their faculties could not have avoided it. And that's what I agree with at trial, to make sure it's true in this case. But that is possible. That's one possibility. Another possibility is that the motorcyclist was several car lengths away. But we don't know any of this. The jury didn't hear any of this. So how would you have ever made use of the intoxication when you have no evidence about the conduct of the motorcyclist or behavior of the motorcyclist to give it any kind of a punch? Well, I think he would have honked if you're using ordinary care and you have all your faculties available to observe a car about to pull out from a parking space. Here the reverse lights come on. She starts to swing in front of him. And so there is time here to react. And I think there is evidence that he would have done so if he weren't so impaired and intoxicated and over the limit. Where's the evidence that he would have had time to react? There was no evidence presented that there was any time to react. And all we know is that she made the U-turn. Next thing, you know, she felt something hit her car. Right. So how do we know that there was time to react here? He hit the driver's doors. It's not like it happens as soon as she pulls out. There is time to react based on the point of impact. Did you have an expert to testify to this? What's that? Did you have an expert to testify to this? That there would have been time to react? Yeah. No, I think it's lay witness, common knowledge. If you hit the door of a car, you'd have time to react. What did the driver say about pulling out? First of all, did the driver say that they backed up first? Right. Reversed, looked again, didn't see him, started to go. Okay. Did they say whether they sped out or slowly? This was a U-turn, right? Right. This was a U-turn. Uh-huh. We don't have testimony on the speed and the record. Okay. And it hit the center of the car is what you're saying, Jason? That's what she's saying. My doors were crunched in. I couldn't get out because of that. Okay. Driver's doors. Mm-hmm. Mm-hmm. Mm-hmm. Anything else? Any other questions? Anything else, counsel? Nothing else, Your Honor. Thanks for your time. All right. Appreciate it. Thank you. Thank you, gentlemen, for presenting a very interesting case. The court will take it under advisement, and the court is adjourned.